Ms. McKee continues to share wisdom. We'll call the first case 20-1013, Talley v. Pushkalai, that's all. Ms. Kahn, good morning. Thanks for your patience. Thank you. Good morning, Your Honor. Natasha Kahn on behalf of court-appointed amicus curiae. I would like to reserve two minutes for rebuttal. Sure. May it please the court, Mr. Quintez Talley should be permitted to proceed IFP in this appeal. I'd like to begin by discussing the voluntary dismissal of the excessive force claim as we view that as the most straightforward way for this court to resolve the question. But was it an effective voluntary dismissal? If it wasn't, what does that do to whether or not it counts as a strike? It didn't comply with Rule 41. Your Honor, respectfully, we think it did comply with Rule 41A1A1 because involuntarily dismissing his excessive force claim, Mr. Talley dismissed all claims against Captain Schrader. Doesn't Rule 41 require a dismissal of an action and not just claims against the person? In this court, Your Honor, under Noga v. Fulton, which is the case the defendant cited, it is a proper use of Rule 41A1A1 to dismiss all claims against a particular defendant. That's just what happened in Noga. He dismissed all claims against one defendant, the plan, and this court said that that was an appropriate use of Rule 41A1A1. But the court regarded his footnote withdrawal as a 12B6, well, it was dismissed under 12B6, even though your client may not have intended it to be used for that purpose. Didn't the court treat it as a 12B6 dismissal? I don't believe so, Your Honor, because in the footnote, Mr. Talley said nothing more, this is at JA57 Note 7, than that he withdraws his Article I, Section 13 excessive force claim. Then, in accepting the withdrawal at Addendum 4, the district court said nothing more than that Mr. Talley agreed to withdraw his claim and that to voluntarily dismiss his claim and that it is therefore dismissed. But even if the district court considered this a 12B6, that does not matter because Noga makes clear that a Rule 41A1A1 dismissal is self-effectuating. So once the plaintiff has voluntarily dismissed his claim, no further action of the district court is needed. The claim against the defendant is simply dismissed. And so I think to the extent that there's any argument about that, because he dismissed all claims against Captain Schrader, that was a proper use of the rule. And so we think that that is the easiest way for this court to resolve that issue. And certainly defendants don't even argue that if this were a proper dismissal, that it would count as a strike. So I think we're all on the same page that a voluntary dismissal does not count as a strike. So to the extent you agree that this was a proper voluntary dismissal, it does not count as a strike. If we were to find, it seems to me, your easiest argument with 18-5087, that that does not count as a strike. If that does not count as a strike, that action, should we get into whether or not 1060 counts as a strike? No, you should not, Your Honor. Because as you know, I think the experience of this court in the last time this issue came up in case number 12-1278 is helpful. Because there, once tally versus grease smear, one of the purported strikes was reversed. The court did not go into whether the other cases count as a strike. And I do agree that 18-5087 is also a perfectly easy way to resolve this question, because that case is still open. There's not been a dismissal. There's been no final judgment that's ever been entered in that case. There was only a dismissal with leave to amend. And under Weber v. McBroggan, neither of the conditions that are required to make a dismissal with leave to amend final. So what would happen if, hypothetically speaking, tomorrow the district court in 5087 dismissed the case? Then that would be, that would count, there would be a final judgment. And I guess the question would be whether or not it counts as a strike. But you started to concede, and you can't resolve. Then that would count, and then you backed up. Yes, I would say it would not count as a strike unless the ultimate closing of the order makes clear that the action was closed on a strike ground. So I think, you know, the question is, of course, whether or not to adopt the Harris rule. And the Harris rule, first of all, Harris is distinguishable because there was an entry of judgment in that case following the plaintiff's failure to amend. And there's been no entry of judgment here. So we're not even in that land. But even taking on the Harris rule, the question is whether you can automatically attribute the reasons for the dismissal with leave to amend to the ultimate closing of the case, or whether there's some other reason that the action could have been closed. And our argument is that the district court needs to make clear that when it ultimately enters judgment that it's doing so for a strike reason, and not, for instance, for the failure to prosecute or to comply with the court's order. And because those are not strike reasons under this court's precedent, under, like, the D.C. Circuit President Butler versus Department of Justice. So I think it would depend on whether or not the ultimate closing of the action explicitly invoked a strike ground. But would any events that post-date the notice of appeal in this action matter for strike purposes? No, it would not, because the IFP analysis concerns when the notice of appeal is filed. So no actions following the notice of appeal would matter. So then it wouldn't count as a strike? So it wouldn't count as a strike for purposes of this case. Of this. Yes. Yes, so that would also be a straightforward way to resolve the issue. But if you – but I can also talk a little bit more about the other issues in the case to the extent they're – The other one's about the certificate of merit, frankly. I keep going around and around and around on that between Schmeigel and Levine and Pennsylvania versus New Jersey's rules for certificate of merit. So unless my colleagues have questions, I'm happy to confine it to 1060 and 5087. It's easier. Yes. Are you conceding? I think on the paper you conceded, but are you conceding that 1687 is a strike? We – well, we argued in our letter brief that if you want to – it would require you to adopt the rule that an alternative holding counts as a strike, which this Court has not adopted. And we argue that that – you shouldn't adopt that rule because it's not a dismissal of the entire action for a strike reason, because it's a dismissal. You're saying this isn't with Byrd also. Right. Yes, because Byrd requires that the entire action be dismissed on a strike ground. And so to the extent you view an alternative holding as a dismissal in part on a non-strike ground, then it wouldn't count as a strike. But that's not one of our – you know, we don't think you need to get to that question at all, because there are – that would be – you know, even assuming that that was a strike, the point is that the other two cases that we've – you've asked us to brief are not strikes. So there's no agreement, so to speak. There's no agreement. That that 1687 is a strike. No, we didn't brief it because this Court did not direct us in the appointment order to brief that case. But in our letter brief, we argued that it was not a strike. Okay. Yeah. But I guess to move to the certificate of merit issue, we agree that, you know, we think – but we think that the other ways of resolving the case are easier. But we also think the certificate of merit issue presents a way to resolve this case because we think it's largely decided by the precedent. Because in Nuveen footnote 13, this Court made clear that dismissing a case for failure to file a COM requires a court to consider matters outside the pleading and, therefore, that a motion for summary judgment would be required. And so we – Except if it's summary judgment and it's based upon something outside the pleading, but the matter, quote, outside the pleading is apparent on the face of the completing, it would seem like, given Pennsylvania's regulatory scheme, the certificate of merit would be implicated on the face of a complaint charging malpractice. Why wouldn't that be tantamount to a 12b-6 as opposed to a Rule 56? So we think that it's important to understand that when the – when the Court judicially notices documents that are outside the face of the pleading in order to resolve a 12b-6, the way that analysis works is that the judicially noticed fact is taken to somehow negate the factual allegations in the pleading. So, for instance, in the case that was cited in Pension, which is the case that the defendant cited, the district court looked at a criminal conviction on the docket, a couple criminal convictions on the docket – this is a Seventh Circuit case – and then said that those convictions negated the claim that a bad faith prosecution had been brought against the defendant, regardless of whether or not a conviction could be obtained. But here in Chamberlain, this Court made clear that the failure to file a COM does not render insufficient pleadings that would otherwise be sufficient. So I think there's no – Wasn't that based upon New Jersey's statute? It was based upon the New Jersey statute, but I – I think it's very different. I don't think there's any difference in the sense that the failure to file a COM doesn't affect what's in the complaint. The only relevant difference that the defendants have pointed to is that there's a state regulation under Pennsylvania that permits a defendant to file a response of pleading 20 days after a Certificate of Merit is filed, if a Certificate of Merit is filed. So that does not – if a Certificate of Merit isn't filed – first of all, by the way, first of all, I don't think that that rule would be applied in federal court because it conflicts with the timing rules and, like, Rule 12b-6. But even if it were applied in federal court, if a Certificate of Merit isn't filed, then that time limit isn't extended. So there's no relevant difference for the purposes of the Pennsylvania statute and the New Jersey statute. And so – but I think the bottom line here is that this Court has held that the failure to file a COM does not at all affect or negate the allegations in the complaint. So there's no way to look at the face of the complaint and say, because we're judicially noticing that there's been no COM, that the complaint is somehow insufficient. And that's what this Court has held in Chamberlain and the whole line of cases that relate to this issue. So it's more like a matter of proof, I think, because it has to do with whether or not the plaintiff will be able to provide expert support for his claims. But that's a different question. So he could easily, you know, state a totally sufficient medical malpractice claim in his complaint, but then not be able to provide expert support for proving it at trial. And that's the reason for dismissing – for the failure to file a COM, which isn't a 12b-6 reason. And so, I guess, unless there are additional... So, yeah, I want to take you back to the voluntary dismissal issue. So we have in Garrett v. Murphy, there was a somewhat different issue. This is a case where the complaint included some legitimate civil rights claims under 1983 and some claims that might be – that were not appropriate for that, that were, like, habeas claims. And our court said that we would basically just disregard the habeas claims, and that we would decide whether there was a strike or not based on the 1983 claims. Why shouldn't we do something like that with regard to a voluntary dismissal, just sort of disregard the claim that was in there and decide based on the remaining civil rights claims that were put in? Well, I think it comes down to the mixed dismissal rule in Talley v. Wetzel, because – which I think – well, anyway, the mixed dismissal rule in Talley v. Wetzel, which says that if you have a number of claims and only some of them are dismissed on strike grounds, then that renders the entire dismissal not a strike. And I think here – I think it's also helpful to think about how – where you're looking in terms of when the case is brought, because, of course, the way that the statute works is that if a plaintiff has brought an action that's dismissed on a strike ground that – three actions that have been dismissed on strike grounds that he can't proceed. And in Abdul-Akbar, you said that bring refers to when the civil complaint is filed. And so here, Mr. Talley, when he filed the civil complaint, brought this excessive force claim, and then he ultimately voluntarily dismissed it. So it renders the whole dismissal mixed under Talley v. Wetzel. And that's how – that's the same as any other analysis, because you agree that when he – if one of his claims had been dismissed for another reason, like for a non-strike reason, that that would render the whole dismissal the same. And so we just don't think there's any relevant reason why it should be different when it comes to a voluntary. Well, it seems that one of the differences is in the Talley v. Wetzel situation, there was at least one claim that had some merit to get past the 12B6 stage. But, you know, we can't say the same with regard to the voluntarily dismissed claim. And so it could have been an entirely frivolous claim. And just if there were a timely dismissal, then that could, you know, prevent a strike. And it seems to perhaps invite gamesmanship on behalf of someone who were inclined to behave that way. Yes, so I have three responses to that, Your Honor. First, in Talley v. Wetzel, the court declined to exercise supplemental jurisdiction over the state law claims. But I don't think that necessarily means that they had merit. And my second point is that – I'm sorry. My second point is that I think the other point here is that to the extent you're worried about gamesmanship, I think that a voluntary – well, first of all, to the extent you're worried about gamesmanship, that should not be taken to overcome the plain language of the statute. Because, you know, even the most formidable purpose-based argument cannot overcome the plain text of the statute. And you said that in Talley v. Wetzel when the defendants made exactly the same kinds of strike-proofing arguments. And there you said that because Congress had elucidated three specific instances that counted strikes, that no other ones could be brought into the statute because of – even if it would, you know, ultimately help the purpose of the statute. But to move to my third point, I actually think that the purpose-based arguments favor us because we are – because when a – the purpose of the PLRA is to prevent, like, litigation over meritless claims. And when a plaintiff voluntarily dismisses his claim before – under Rule 41a1, before the defendant has even, like, had to respond or engage much with it, that actually preserves the judicial resources and helps, you know – overall, I think, actually helps the purpose of the PLRA. And then my – sorry. And then my fourth point is also that I don't think that we can take the voluntary dismissal as a – as in holding on the merits of the claim because the rules tell us not to. So under Rule 41a1b, the rules state that the first voluntary dismissal of a claim is not an adjudication on the merit. So I don't think – I think it would be in conflict with that rule to hold that a voluntary dismissal is necessarily a statement about – Well, I think he did because he – I mean, he's a pro se plaintiff, so I think some grace should be allowed him. But he did state in his brief in opposition that he was withdrawing the claim. And he did – In a footnote. In a footnote. But that's still – I mean, that's still – he still gave notice that he was withdrawing the claim. And he – as I said, he dismissed all claims in doing so against Captain Schrader. So he used the rule appropriately. And I think district courts in this court have – you know, have – in this circuit, sorry – have liberally construed plaintiffs – pro se plaintiffs' pleadings when they make a notice of withdrawal in that way. And I don't know that he would necessarily know that he had to file a separate document. But the effect of it is the same. So I hear what you're saying about preserving the resources of the court and the defendants in regard to any one case to, you know, withdraw a claim that – you know, for whatever reason. But if one were to sort of dismiss in every – every action and dismiss one claim and then become strike-proof, then that wouldn't be consistent with the three strikes. Yes, I agree with that, Your Honor. But I just want to emphasize that the three strikes rule is not the only tool available for district courts to deal with abusive filings. So first of all, Section 1915A states that a district court may permit a prisoner to proceed IFP. And this court has held open that in extreme circumstances where a prisoner is filing, you know, multiple abusive lawsuits, that a district court can choose to not permit them to proceed IFP, regardless of whether they recruit three strikes. And that principle is also supported by the Supreme Court in Cardona v. Thomas, which did the same thing and told a – and I can follow up with a 28-J letter about this case because I did not cite it. But it's just a case where the Supreme Court simply said that because a prisoner had been filing too many abusive lawsuits, that they would not be permitted to proceed IFP anymore. And that was regardless of the three strikes issue. There's also the fact that under Section 1915E2B, a district court can at any time dismiss a claim as frivolous or for failure to state a claim or as malicious. And so a district court could always reach out and, I think, dismiss a claim as one of those reasons even before the prisoner voluntarily dismisses. And there's also just the fact that the screening order, the screening function of the district court, similarly, I think, permits the court to dismiss claims for the enumerated reasons even before the complaint is docketed. So I think that the district court possesses a number of ways to control and make sure to address these kinds of abusive tactics. And most importantly, that it can just decide to deny IFP status to an abusive prisoner in its discretion. Before you leave, is there anything you'd like to say about the imminent danger of serious physical injury? I'd just like to say that even assuming there's a nexus requirement, Mr. Talley has satisfied that because he brought in his complaint a request for injunctive relief against Secretary Wetzel to address the DOC's overall policy of responding to mentally ill prisoners by threatening them or putting them in solitary confinement. And so a request for that relief would redress the imminent danger that he talked about at JA 161 to 163. Thank you very much. We'll see you when we vote. Good morning, Ms. Neal. Good morning, Your Honors. May it please the court. My name is Cassidy Neal, and I am counsel for appellee Dr. Pillai. As I'm splitting my time with my co-appellee counsel, we've also agreed to split the issues for discussion today. So if it will please Your Honors, I will be discussing the medical malpractice and imminent danger issues. And I'd like to begin with the medical malpractice issues, unless there are any questions you want me to jump in on. Okay. Go ahead. I just want to touch on a couple of things that amicus counsel stated, specifically that an individual pleading a medical malpractice claim can state a totally sufficient malpractice claim without a certificate of merit. I disagree. I'm sorry, again, stating totally? Yes. Amicus counsel indicated that a plaintiff can file a medical malpractice claim and state a totally sufficient malpractice claim without a certificate of merit. I'm sorry, you're saying sufficient or deficient? Sufficient. Okay. I disagree with that point. I know you do, but that's what the rule provides for. As long as a statement is then made that it's a situation where a statement of an expert or an affidavit of an expert is not required, that's tantamount to a certificate of merit. You're basically saying I don't need a certificate of merit, and you take your chances as to whether or not you can prove your case without expert testimony. In the event that a plaintiff files a certificate of merit consistent with Pennsylvania law stating that, but a plaintiff who is pleading a malpractice claim must file a certificate of merit in order to establish the plausibility of the claim. Whether they're indicating that they won't. This is a pro se pleading, and we are obligated to interpret that liberally, and how much should we dot I's and cross T's and dance between the raindrops and the technicalities of the rules? In a situation where a prisoner, incarcerated inmate, is bringing a medical malpractice claim. And they say, look, I don't need an expert because expert testimony is not required here. It's not technically a certificate of merit stating that, but it's a statement to the court to that effect. Well, the court has required that a certificate of merit specifically be filed by any plaintiff who is filing a medical malpractice claim, whether they're pro se or not. The state law requirements under the Pennsylvania Certificate of Merit rules have been applied substantively, and they apply to pro se and counseled individuals. The certificate itself is a required filing that must be submitted under Pennsylvania law during the pleading stage. So once a complaint is filed and alleges medical malpractice, the certificate of merit indicating that there's a qualified expert or that a qualified expert is not necessary has to be filed thereafter. And the court has held that if a certificate of merit is filed indicating an expert's not necessary, then we move on to discovery and summary judgment. But here, Talley didn't file a certificate at all. And the appropriate amount of time was provided to him under Pennsylvania under the Schmeigel case, and he was given notice and 60 days after filing his complaint to file the certificate of merit. He failed to do so, so the court properly considered a 12B6 motion. Well, I'm not sure we can say the court properly did that. I mean, we have Schmeigel, we have Chamberlain, and we have Nuveen. They all say that that's a summary judgment issue. That is beyond the pleading. Well, I would say that Nuveen and the Chamberlain cases are dealing with New Jersey, which is a slightly different statute than under Pennsylvania. In New Jersey, the affidavit of merit is something that's filed after the closing of pleadings, regardless of the timing. So under Pennsylvania law, we're dealing with a plaintiff who is required to file a certificate of merit within 60 days of initiating their complaint. But that's exactly it. It is not in the complaint. It's not a requirement at the complaint stage. And if it's 60 days later, that is something beyond what we consider the pleading stage. So I have two comments on that, Your Honor. First, the certificate of merit is something that is necessary to supplement a complaint if an individual wants to state a plausible malpractice claim. Otherwise, we're dealing with conclusory allegations asserted by a lay person who's questioning the judgment of a medical professional. With respect to the Schmeigel case specifically, the court held that a plaintiff's case can be dismissed by a defendant by an appropriate motion. It can be a motion for summary judgment if the timing requirements aren't met. But here the timing requirements were met. Sixty days passed after Talley filed his complaint. Notice was given by Dr. Pillai that a dismissal would be filed if he did not comply in 30 days. Thirty days passed. A motion to dismiss was filed. No certificate of merit was filed. And the court granted the motion for failure to state a claim. I believe the court properly took into consideration the lack of a certificate of merit and the notice of intention that was filed by Dr. Pillai. These are things that can be considered by federal courts when dealing with 12b-6 motions because they are matters of public record, the docket, and or indisputably authentic documents. No one is questioning the authenticity of the notice of intention that was filed on behalf of Dr. Pillai after the appropriate amount of time had passed giving Talley notice. So under these circumstances, a court can absolutely grant dismissal under 12b-6 grounds because a plaintiff hasn't stated a claim. He needs a certificate to support his claim, lend it plausibility, and if it's not applicable and there's no issues with timing, then a 12b-6 remedy is certainly an appropriate one. Any other questions on the certificate of merit issues, Your Honors? I'm seeing that I'm close to running out of time, but I would like to briefly address the imminent danger issues. I, of course, would submit that a nexus requirement is within the text of 1915G. The statute indicates that for an individual, an inmate, to bring a cause of action, a complaint, or an appeal, he must be under imminent danger. Unless he has accumulated three strikes, then he must be under imminent danger. Excuse me. I'm not satisfied here. Miscon argues the action here includes an action as a defendant against the Secretary of Corrections, then-Secretary Wetzel, and I cannot tell you how many cases I've seen. Frankly, they boggle my mind. Pennsylvania's utter disregard for placing mentally ill and mentally challenged folks into solitary confinement, that, at least according to the allegations here, that's going to impact his plaintiff, no matter where he's housed, as long as he's under the authority of the Commissioner of Corrections, Superintendent of Corrections. So why isn't the nexus satisfied, even though he's in a different institution from when he initially alleges the malpractice occurred? Sure. I see I'm out of time. There's no objection. So if we are applying the nexus requirement as it's set forth in the Pettis case by the Second Circuit, we are requiring there to be some fairly traceable connection between the allegations of imminent danger in the motion to proceed in the form of papyrus and the complaint. And then we're also looking to find that there's some ability to redress the complaints or address the imminent danger motions allegations in the underlying cause of action. I do not believe that that nexus has been met, even with the claim against Secretary Wetzel. In Talley's complaint, he is alleging very discrete claims that occurred at SCI Green, and he is seeking damages, and the only non-monetary damages that he's seeking is a sanction for DOC staff who fail to work responsibly with SMU inmates. This is, of course, related to what occurred at SCI Green, not what was occurring at SCI Fayette, where he is complaining of very different things, the conditions of confinement in his cell, whether or not his complaints of mental illness are being reported to psychiatry and the amount of time psychiatrists are spending with him. Those things were not included in the complaint in Green. So I would submit, Your Honors, that the nexus requirement has not been met in this case. Any other questions? Thank you very much for your time. May it please the Court. My name is Michael Scarinci. I'm with the Pennsylvania Office of the Attorney General. I'm here representing the DOC employees. Since 2015, Talley has filed 68 lawsuits in the district court, and since 2019 he's filed 39 appeals to this court, 15 of which are still pending. Talley is exactly the type of abusive litigator that Congress had in mind when they enacted the three strikes rule. There's a good response to that, and that is the 1915A provision where IFP is permissive. It's not required. So if the district court, irregardless of whether or not there's been some kind of abuse or mechanism with bringing frivolous lawsuits serially, and that may be the case here, the district court has another mechanism other than the heavy hammer of the 1915G prohibition. I think the difference in that situation is that abusive litigator is a much higher standard than failure to state a claim on three occasions. And here Talley does, in fact, have three strikes. As my co-counsel said at the outset, I'll be addressing the dismissal of a state constitutional law claim and the assault and battery claim in Pillai, and then the dismissal with leave to amend, where Talley never amended in Talley v. DOC. Let me start with the last one. That's 5087? 5087, yes, that's the leave to amend. And that's still pending? No, Your Honor, that is not still pending. Talley twice was offered the opportunity to amend. He declined both times. He asked for an appealable order. The district court told him, you already have an appealable order. I dismiss this with failure to state a claim. And then this court, when it questioned its jurisdiction, said, Talley said, I'm electing to stand on my complaint. So he had already decided that the court had said this was a final order and it was dismissed for failure to amend. But didn't the Supreme Court in Lomax specifically provide that a dismissal with leave to amend is not considered a strike under 1915G? Yes, in footnote 4 in Lomax, the Supreme Court said when a court grants leave to amend, the suit continues. However, what the court meant there is that when the inmate still has the opportunity to amend, here the suit didn't continue. It ended for all the reasons I just said. He had two opportunities to amend. He did not. He asked for a final appealable order. The court said, you have one. And he elected to stand on his complaint. This was a final order. In fact, if you go back to footnote 4. You're right. Proceed with that. But that's not what 1915G says. And we're limited, aren't we, to the three things that are provided for in 1915G. It's exactly what 1915 says. I would ask Your Honor to follow the Ninth Circuit in Harris v. Mangum when they explained that a dismissal for failure to state a claim with leave to amend fits within the literal terms of the text. It's just that the judgment is delayed. The entry of judgment is delayed until he fails to amend. And to go back to just Why didn't Congress say that? We're all impressed with Congress's ability to draft legislation and address issues by legislation. Congress could have said that when they drafted it. Well, they didn't say leave with amend or without leave to amend. And they didn't say with prejudice or without prejudice. And still the Supreme Court in Lomax said a dismissal without prejudice counts as a strike. So I think we're reading things into there where we say it has to be a dismissal without leave to amend. And in any case, going back to footnote 4, if you look at that footnote, the High Court cites to pages 27 and 28 of the Solicitor General's brief there. And what the Solicitor General said there was that at those pages is when a prisoner wastes judicial resources by declining an opportunity to amend a complaint, it is hardly inequitable for a strike to accrue. So it's consistent with both the text and the purpose of 1915G, to call a strike when an inmate has the opportunity to amend and does not amend. Isn't this case still pending? Absolutely not, Your Honor. The court is closed. If you go to Pacer, it says closed. Talley did attempt to file an amended complaint. The clerk put it on the docket. But I'd note that since July of 2023, Talley is not taking any steps to advance this litigation because he knows that as soon as he tries to attempt to move the litigation, the court is going to tell him yet again that this case has closed and that it's time to appeal. And now he's voluntarily dismissed his appeal. So this litigation is over. Turning back to the state constitutional law claim, Your Honor, the most straightforward reading of what the district court did with respect to that claim was dismiss for failure to state a claim under Rule 12b-6. There are at least five markers that indicate that this was a Rule 12b-6 dismissal. That was the exclusive basis for our motion. The court invoked the familiar 12b-6 standard at the outset. The court set in a heading the complaint fails to state a claim against the Commonwealth defendants. Then the court was methodical in going through each claim, saying, therefore, this claim will dismiss. And finally, fifth, the court conducted a futility analysis. That is a clear dismissal. Now, my friends on the other side, they want you to engage in speculation and say, this was a Rule 41 dismissal, and it was at least with respect to Captain Strader. Yet neither tally nor the district court invoked either Rule 41 or mentioned Captain Strader at all. Judge McKee, as you pointed out, this was a footnote. It was in response to our 12b-6 motion that pointed out all the reasons why he could not possibly state a claim under Pennsylvania law for a Pennsylvania constitutional violation. And his response was, I want to withdraw the claim, and he put that in a footnote. That was a concession, and the court treated it as such. So my understanding is you think he should have filed an amended complaint to just remove the one claim that he sought to withdraw in that footnote. Is that correct? That would have been the proper way to withdraw a claim, to do it under Rule 15, and then the claim would not exist at all. We wouldn't be talking about it. Every day in the district courts, parties, counseled and otherwise, withdraw claims informally like Mr. Talley did. And generally it saves the resources of everyone. You don't have to file a new motion to dismiss. There are all sorts of things that would have to happen if one were to amend a complaint just to withdraw something. So why should we hamstring the district courts and defendants, frankly, to have to do all these extra steps when it disbehooves everyone to let a withdrawal be informal? I think that's a fine way to do it. If the court said on the record, yes, you're withdrawing the claim, and then the claim does not exist anymore. When someone amends the complaint, as Your Honors know, then the motion to dismiss is directed to the new amended complaint. So it would be as if the state constitutional law claims. So if Your Honors want to treat this as a withdrawal under Rule 15 where he amended the complaint, that's still a strike because the claim does not exist anymore. So I think that's perfectly fine, and he would still – then you would just look at the assault and battery and the other claims that are remaining. And I can turn now to the assault and battery claim, Your Honors. You've said several times in cases like Ball v. Famiglio and Milhouse that a dismissal based on immunity constitutes a strike when the district court explicitly and correctly concludes that the complaint reveals immunity defense on its face. Now, this was an explicit dismissal for all the reasons I've just said, the five markers that this was explicit. It was also a correct dismissal, Your Honors, because the district court looked at the face of the complaint and looked specifically at Paragraph 30, and the court said, quote, undeniably, Lieutenant Morris was acting within the scope of his employment. He had threatened Talley with the use of force because he refused to move out of his cell. And that's one of the quintessential tasks of a correctional officer is to use force when required or threaten the use of force when an inmate will not voluntarily come out of his cell. Now, my friends here, they suggest that it wasn't a correct dismissal because the court relied on a different statute. Now, these two statutes, they're very similar. They both relate to immunity. One just happens to go to the local agencies and one for Commonwealth officials. And, in fact, that statute relates to exceptions for negligence, and this was not a negligence claim. This was an assault and battery claim, so really it had no relevance. Now, my friends also suggest that this was really a subject matter jurisdiction. Now, that's wrong for several reasons. Subject matter jurisdiction, that's determined by the Constitution and by acts of Congress. State sovereign immunity is determined by the Pennsylvania legislature, and as the high court has said many times, no party can consent to the jurisdiction of the federal courts. And that's exactly what would happen if we're talking about state sovereign immunity because, again, it's determined by the Pennsylvania legislature. Well, that gets you to 12b-1, though, doesn't it? It would be 12b-1 if it's subject matter jurisdiction, but state sovereign immunity is 12b-6. It's not a subject matter jurisdiction issue. For those reasons I said, it's not consistent with what we see typically in a subject matter jurisdiction issue. Moreover, state sovereign immunity is a waivable affirmative defense, and as Your Honors know, subject matter jurisdiction is not waivable and can even be raised sua sponte by the court on its own motion. Your Honors, I've addressed the three issues. I know my time is up here. I'm happy to answer any further questions you have about the issues I addressed or about Ms. Neal. Thank you very much. All right, thank you, Your Honors. I'd like to begin by briefly discussing the voluntary dismissal. I think that my friend on the other side said that if the claim had actually been done through a leave to amend of some sort, that that would not count as a strike. But first of all, that's not what happened here because, as we've said, this was a proper use of Rule 41A1A1. And second of all, the point is that Mr. Talley brought the claim and then voluntarily dismissed it. So at the time A was brought, and so it satisfies, you know, it was part of the action that was brought under 1915G, and then it was voluntarily dismissed. And I think that makes it different from the habeas point that you raised, Judge Freeman, because habeas claims are not part of the PLRA at all, versus it was a perfectly permissible use of the PLRA to bring this medical malpractice claim. I'm sorry, to bring this excessive force claim in the first place. To move next to the medical malpractice claim, I think that the entire argument on the other side is that somehow, by not filing the COM, that rendered the pleadings insufficient. But that's wrong for two reasons. First of all, in Ligon-Redding, this court already explicitly stated that the failure to file a COM does not render pleadings insufficient that are otherwise sufficient. Second, this whole argument about the New Jersey statute is different from the Pennsylvania statute is not helpful to the other side, because their only reason for bringing that up is to say that somehow, in Pennsylvania, the COM is a part of the pleading stage and is therefore a pleading. But this court explicitly stated in Ligon-Redding that the Pennsylvania Certificate of Merit, like its New Jersey counterpart, is not a pleading, and relied heavily on the temporal separation of the pleading of the complaint from the Certificate of Merit. Let me go back to 1057. Okay. I mean, 5087. Yeah. What, I think, do we make of the fact of your opponent's argument that nothing's happened on that case since he filed the amended complaint on June 20th of 23? Yes. So I think that the Weber v. McGrogan, the case that we filed in our Rule 28-J letter, makes pretty clear that there are only two circumstances under which a dismissal with leave to amend can be made final. And neither of those circumstances have been satisfied here, and it doesn't really relate to whether or not, like the district court, what it did in relation to the amended complaint. Because the only two things that could have made that dismissal with leave to amend final were either that the district court issued a self-effectuating order where it said that if Talley didn't amend, that that would become a final judgment, and the district court clearly did not do that here, or that Talley expressed a clear and unambiguous intent to decline the opportunity to amend and stand on his complaint. And Talley did not do that here. He did not even know at the time that he said he was standing on his complaint that he had the opportunity to amend. And you can see that at JA-156, because he stated that, I never got a copy of the order from the court giving me the leave to amend. And so once he knew he had that option, he asked the court to dismiss his case through Rule 42-B. And I think it's important to emphasize that Talley's, you know, a pro se prisoner. He's clearly not been receiving many of these orders from the court, and he's been also, his case consistently has been stayed. So some of the timeline here in terms of it looking like a long period of time between the dismissal with leave to amend and the amended complaint, like almost all of that time is accounted for by the stays in the Third Circuit. And Talley stated that when he said at JA-156 that, you know, now that the stay has been lifted and I have the ability to tell the court, I'm telling the court that I want to go back and amend my complaint. So he never declined, never clearly and unambiguously declined the opportunity to amend. So that dismissal was never rendered final. And I see my time is up, but just brief, if I may just briefly on the imminent danger point. There is a nexus here because in both, in both at JA-162, note six to seven in his imminent danger motion, Talley clearly states that the imminent danger is that when he expresses his thoughts of being suicidal and that he needs mental health treatment, the DOC responds by putting him in solitary confinement as a punishment. And that's the exact same conduct that's cited at JA-15 to 16 in his complaint, because there too he said that Secretary Wetzel knowingly allows a policy of letting mentally ill prisoners, rather than receiving appropriate treatment, be punished by being put in solitary confinement. So it's the exact same harm and any relief against Secretary Wetzel would redress it. And just very briefly on the immunity point, this court held in Ray Hechinger that sovereign immunity is a subject matter jurisdiction issue, so when an 11th Amendment defense is successfully proven, it divests the federal courts of subject matter jurisdiction. And the court there also recognized that subject matter jurisdiction, state sovereign immunity, can be waived, but those two things exist and it doesn't mean that the underlying immunity isn't jurisdictional. Can I just take you back very briefly on the timing of the matter 5087, at the time of the notice of appeal in this case? So the notice of appeal was filed on December 19th, 2019. On that date, Mr. Talley had filed, his 60B motion had been granted in 5087. He had been granted until November 14th, 2019, to file an amended complaint. He had not complied with that, but there had been no subsequent order. So that's the status of 5087 at the time of the notice of appeal in this case. So what does that mean in your view? It means that there was no final order under Weber v. McGrogan, because Weber v. McGrogan makes clear that the mere failure to amend does not render a dismissal with leave to amend final. And as I said, that one of two actions needs to be taken in order to render the decision final, and no action like that had been taken at the time. He took that action in February, it appears, in February of 2020, after the filing of his notice of appeal in this matter. Well, in February of 2020, he asked for the motion for an appealable order, yes, and so he hadn't taken that action at the time this notice of appeal was filed. And not taking which action? In 5087, he hadn't requested a motion for an appealable order. When this was filed? When this was filed. And that's when the clock stopped? Yes. Thank you very much. Thank you, Your Honor. We want to thank Ms. Kahn and her colleagues at Georgetown's legal clinic for taking this case on a pro bono basis. This is greatly appreciated. Thank you very much.